**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———————————

SASHA NORDEEN,

      Plaintiff,

v.                                                    No. 1:22-cv-00180-MLG-KK

SELECT PORTFOLIO SERVICING INC.,
and FEDERAL HOME LOAN MORTGAGE
CORPORATION, as trustee for SEASONED
CREDIT RISK TRANSFER TRUST, SERIES
2016-1,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS</u>

      This matter is before the Court on Defendants Select Portfolio Servicing, Inc. ("SPS") and Federal Home Loan Mortgage Corporation as Trustee for Seasoned Credit Risk Transfer Trust, Series 2016-1's, Motion to Dismiss ("Motion"). Doc. 6. Plaintiff Sasha Nordeen brought multiple claims based on seeking extended forbearance relief under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 15 U.S.C. §§ 9001-9080. Having reviewed the parties' filings, the record, and relevant legal authority, the Court will grant the motion in part and deny the motion in part.

## BACKGROUND

### I.    **Relevant Factual Background**

      On May 18, 2006, Nordeen purchased a property located in Santa Fe, New Mexico. Doc. 1-1 ¶ 6. On the same date, Nordeen obtained a note and a mortgage with Wells Fargo ("the Loan").

*Id.* ¶ 7. On or around December 20, 2016, ownership of the Loan transferred to "Freddie Mac Trust"[1] and servicing of the Loan was transferred to SPS. *Id.* ¶¶ 8, 9.

Four years later, in 2020, the United States Congress passed the CARES Act to assist individuals, families, businesses, and healthcare providers with the economic and public health crises created by COVID-19. *See* 15 U.S.C. §§ 9001-9141. Among other things, the CARES Act contains provisions designed to assist struggling homeowners and mortgagees by allowing them to request forbearance. *See id.* § 9056. To avail themselves of this relief, a borrower must have a federally backed mortgage loan and be experiencing financial hardship due to COVID-19. Pertinent to the current litigation, these federally backed loans include those "purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association." *Id.* § 9056(a)(2)(G). These loans are otherwise known as "Freddie Mac" loans. *Id.*; *see* 12 U.S.C. § 1451 *et seq.*

On or around June 28, 2020, Nordeen completed the COVID forbearance request form on SPS's website. Doc. 1-1 ¶ 19. Two days later, Nordeen called SPS to confirm that she would receive forbearance relief. *Id.* ¶ 20. During this call, SPS (erroneously) indicated that the Loan was not federally backed and there was no record of her request for relief. *Id.* However, SPS offered her six months of initial forbearance relief, which Nordeen accepted. *Id.* ¶¶ 20-22. Her first period of forbearance relief began on July 1, 2020. *Id.* ¶ 23. By letter, on July 24, 2020. SPS subsequently confirmed that Nordeen had a federally backed loan entitling her to relief. *Id.* at 21. The letter also

---

[1] Throughout her complaint, Nordeen refers to the "Freddie Mac Trust," when referencing the second defendant in this case, Federal Home Loan Mortgage Corporation as Trustee for Seasoned Credit Risk Transfer Trust, Series 2016-1. Based on the parties' Stipulated Motion to Amend Case Caption, the Court will hereafter refer to this second defendant as the "Mortgage Corporation" unless otherwise indicated. *See* Doc. 42 ¶ 2 (amending case caption to refer to the "full, correct name" of said defendant).

stated, "Under the CARES Act, you may be able to extend your forbearance for up to a total of 12 months of forbearance." *Id.*

On December 20, 2020, Nordeen completed a request for an extension of her forbearance relief; she was offered, and accepted, a five-month extension. *Id.* ¶ 27. This relief began on January 1, 2021, and was scheduled to end on June 1, 2021. Doc. 6-4 at 1.

Thereafter, on May 16, 2021, Nordeen completed a second request for an extension of forbearance relief, which SPS rejected. Doc. 1-1 ¶¶ 28-29. The stated basis for SPS's denial was their assertion that Nordeen had been offered the maximum amount of forbearance relief allowed for the Loan. *Id.* ¶ 30. The same day, Nordeen contacted SPS via e-mail about this denial; SPS did not respond. *Id.* ¶¶ 39-40. Days later, Nordeen sent another e-mail and, again, her inquiries went unaddressed. *Id.* ¶¶ 41-42. Then, Nordeen called SPS, and during this conversation, SPS told her that it was wrong to have previously denied her an extension of forbearance relief and she should have received the extension. *Id.* ¶¶ 45-46. Following this conversation, Nordeen continued to contact SPS via telephone; SPS indicated that it was "resolving the issue" pertaining to the denial of the extension of relief. *Id.* ¶ 47. Notwithstanding these representations, SPS was taking no action. *Id.*

Nordeen subsequently opened complaints with the Office of the New Mexico Attorney General and the Consumer Finance Protection Bureau regarding SPS's conduct. *Id.* ¶¶ 54-55. In its responses to these complaints, SPS indicated that while the Loan was owned by the Mortgage Corporation it had been eligible for forbearance relief, but upon sale of the sale of the Loan it had become ineligible for relief. *Id.* ¶ 57. Nordeen asserts that the Loan has never been sold. *Id.* ¶ 58.

In September 2021, Nordeen sent a letter to SPS under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, requesting information pertaining to the

Loan. Doc. 1-1 ¶ 62. In response, SPS indicated that the Loan had never been sold and still belonged to the Mortgage Corporation. *Id.* ¶ 63. Then, on October 19, 2021, Nordeen opened a second complaint with the Consumer Finance Protection Bureau. *Id.* ¶ 65. SPS responded that the Loan still belonged to the Mortgage Corporation, but it had previously been sold, so it was not entitled to further forbearance relief. *Id.* ¶ 67.

On November 2, 2021, SPS sent Nordeen a letter titled "Notice of Default—Right to Cure" ("Demand Letter") that indicated Nordeen was delinquent in her payments on the Loan, the Loan was in default, and she could be in foreclosure. *Id.* ¶¶ 70-71. The Demand Letter also referenced prior communications SPS supposedly sent Nordeen to try and resolve her default status; Nordeen alleges she never received these communications. *Id.* ¶¶ 70, 76. In the meantime, SPS visited Nordeen's property and left notices that they had been unable to contact her. *Id.* ¶ 82.

Nordeen followed up and sent SPS additional RESPA letters. *Id.* ¶ 79. SPS responded to that correspondence but did not remove her Loan from delinquency status or give her additional forbearance relief. *Id.* ¶¶ 80-81. Nordeen has not provided the Court with copies of any of these alleged communications.

On February 18, 2022, Nordeen filed her complaint in New Mexico state court. Doc. 1 ¶ 1. On March 9, 2022, Defendant SPS removed the matter to federal court. *See id.* In her complaint, Nordeen asserts ten causes of action, most of which are premised on her arguments that Defendants had an obligation to extend the forbearance plan to a full eighteen months under 15 U.S.C. § 9056(b)(2). Doc. 1-1 ¶ 31. Nordeen's claims include (1) violations of the New Mexico Unfair Trade Practices Act, NMSA 1978 § 57-12-2(D) (2019), Doc. 1-1 ¶¶ 88-104; (2) negligence, *id.* ¶¶ 106, 108; (3) negligent misrepresentation, *id.* ¶ 113, 115-16; (4) negligence per se, *id.* ¶¶ 121-22; (5) breach of contract, *id.* ¶¶ 128, 133; (6) breach of the covenant of good faith and fair dealing,

*id.* ¶¶ 137-38; (7) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d, e, f, Doc. 1-1 ¶¶ 153-56; (8) tortious debt collection, *id.* ¶¶ 159-65; (9) violations of RESPA, *id.* ¶¶ 169-70; and (10) vicarious liability, *id.* ¶ 174-76. Nordeen also seeks punitive damages. *Id.* at 20. The parties agreed to a stipulated dismissal of Nordeen's eleventh cause of action for Mortgage Corporation's alleged negligent hiring and retention. Doc. 51 at 1.

## II.   Defendant's Motion

Defendants ask the Court to dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 6 at 1. Defendants argue the case should be dismissed "because the underlying premise of all counts is that Defendants had a legal obligation to grant [Nordeen's] request for additional forbearance . . . [h]owever, Defendants had no such obligation and therefore all claims fail." *Id.* Defendants further argue that: (1) extension of forbearance relief under the CARES Act is permissive and not a requirement; (2) the CARES Act does not create a private cause of action; and (3) Nordeen already received an additional period of forbearance of five months so she cannot claim that denial of additional forbearance created any damages. *Id.* at 2.

In response, Nordeen argues she has sufficiently pled entitlement to the full eighteen months of forbearance relief. Doc. 10 at 2-3. She also argues she has not pled any count under the CARES Act. *Id.* at 3. Nordeen then individually addresses Defendants' arguments as they relate to each of her claim, which the Court will examine in further detail below.

Defendants argue, for the first time in their reply brief, that Nordeen lacks standing for failure to establish damages. Doc. 12 at 4-7. Defendants contend Nordeen's mortgage payments have been paused due to the pendency of this case and, as a result, she has not suffered any concrete harm. *Id.* at 7.

The Court held a hearing on the Motion on September 22, 2023. Doc. 53.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." A motion to dismiss is proper when a plaintiff can neither receive nor obtain relief under any set of facts in the complaint. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). A claim is subject to dismissal if it does not "possess enough heft to show 'that the pleader is entitled to relief.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). For a complaint to survive a motion to dismiss, it must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, the Court must take all well pleaded facts as true, view all facts in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party. *Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

## ANALYSIS

### I.    Forbearance relief under the CARES Act

Nordeen argues she was entitled to a "full relief period as mandated by the FHFA"—i.e., a total of eighteen months of forbearance. Docs. 1-1 ¶ 15; 10 at 2; 53. The pertinent statutory language does not support Nordeen's position. 15 U.S.C. § 9056(b)(2) provides,

> Upon a request from a borrower for an additional period of forbearance . . ., such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower, provided that, at the borrower's request, either the initial or extended period of forbearance may be shortened.

Nothing in that provision mandates that a borrower receive two periods of forbearance that are both one hundred and eighty days long. *See United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) ("When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls."). Rather, a borrower is entitled to an initial period of forbearance and at least one extension of forbearance relief, but the length of those periods is discretionary, so long as each does not exceed one hundred and eighty days. Any additional periods of forbearance are similarly permissive notwithstanding the possible extension of eligibility by the United States Federal Housing Finance Agency ("FHFA").[2] Here, SPS granted Nordeen the full one hundred and eighty days of initial forbearance and a five-month extension of forbearance relief. *See* Docs. 1-1 ¶¶ 22, 27; 6-4 at 1. Section 9056(b)(2) does not require that Nordeen should have received another full one hundred and eighty days of forbearance nor a second extension of forbearance relief. SPS's challenged conduct does not run afoul of the provisions expressed in Section 9056(b).

A.    **The New Mexico Unfair Practices Act**

Defendants argue Nordeen's claim under the Unfair Practices Act ("UPA"), NMSA 1978, § 57-12-2 (2019), is conclusory, does not contain specific misrepresentations, and fails as a matter

---

[2] While the moratorium in the CARES Act expired sixty days after March 18, 2020, the FHFA issued several extensions of the forbearance program to Freddie Mac-insured mortgages. For example, on February 25, 2021, the FHFA extended COVID-19 forbearance relief until June 30, 2021. This extension allowed borrowers to apply for a possible three-month extension of forbearance relief, such that they might receive up to eighteen months of forbearance total. *See* Doc. 1-1 at 3 n.2 (citing *FHFA Extends COVID-19 Forbearance Period and Foreclosure and REO Eviction Moratoriums* (Feb. 25, 2021) Federal Housing Finance Agency, https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Extends-COVID-19-Forbearance-Period-and-Foreclosure-and-REO-Eviction-Moratoriums.aspx).

of law. Doc. 6 at 4. Moreover, Defendants aver that this claim fails because none of the allegations

pertain to the sale of goods or services. *Id.* at 4-5.

The UPA defines "unfair or deceptive trade practice" as "an act specifically declared

unlawful pursuant to the [UPA], a false or misleading oral or written statement, . . . or other

representation of any kind knowingly made in connection with . . . services . . . or in the collection

of debts by a person in the regular course of the person's trade or commerce[.]" Section 57-12-

2(D). The statute then lists examples of conduct which may constitute an unfair trade practice. *See*

§ 57-12-2(D)(1)-(19).

Nordeen alleges Defendants engaged in the following unfair and deceptive trade practices:

"1) indicating that [Nordeen] was not eligible for forbearance relief when she was; 2) indicating

that the Loan was sold when it was not; 3) indicating that [Nordeen] was delinquent when she was

not and/or should never have been because [Defendants were] in error." Doc. 1-1 ¶ 84. Nordeen

relies on Section 57-12-2(D), detailing the following two types of unfair practices:

> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to
> state a material fact if doing so deceives or tends to deceive;
>
> (15)  stating that a transaction involves rights, remedies or obligations that it does
> not involve[.]

Doc. 10 at 3. The UPA also imposes an affirmative duty "to disclose material facts reasonably

necessary to prevent any statements from being misleading." *Smoot v. Physicians Life Ins. Co.,*

2004-NMCA-027, ¶ 15, 135 N.M. 265, 87 P.3d 545.

The Court addresses Nordeen's first allegation—that SPS wrongfully indicated she was

not eligible for forbearance relief. Nordeen asserts that SPS's denial of her eligibility for relief on

May 16, 2021, was a misrepresentation because SPS falsely claimed that she had received the

maximum months of forbearance relief. Doc. 1-1 ¶ 37. During their phone call on May 27, 2021,

Nordeen claims SPS admitted it incorrectly denied her the extension of forbearance relief on May 16, 2021, but there was no subsequent communication regarding whether she would receive that relief. *Id.* ¶¶ 46-47, 53.

Taking these facts as true and drawing all reasonable inferences in favor of Nordeen, the Court concludes this first alleged misrepresentation does not state a plausible claim for relief under either Section 57-12-2(D)(14) or Section 57-12-2(D)(15) because SPS had no statutory obligation to extend Nordeen's forbearance periods beyond the eleven months she received. However, SPS's assertion on May 27, 2021—that Nordeen should have received an extension of forbearance relief—survives dismissal, as SPS represented, as the servicer of her mortgage, that she was entitled to a legal right and remedy that did not exist. *See* § 57-12-2(D)(15).

Next, the Court looks to Nordeen's claim that SPS made multiple misrepresentations as to the status of the Loan, including her allegation that SPS incorrectly indicated the Loan had been sold. *See* Doc. 1-1 ¶¶ 59-60, 64, 69. Nordeen claims that SPS represented in letters dated September 10, 2021, and November 1, 2021, that her Loan was ineligible for forbearance relief because it had been sold. *Id.* ¶¶ 57, 67. In its November 1 response, SPS stated that the Loan still belonged to the Mortgage Corporation. *Id.* ¶ 67. Yet, a month prior on October 1, 2021, SPS further muddied the issue through its response to Nordeen's first RESPA letter. *See id.* ¶¶ 62-63. In those communications, SPS indicated that the Loan had *not* been sold and still belonged to the Mortgage Corporation. *Id.* ¶ 63. The Court concludes, when taking the alleged facts as true, that this second claim of misrepresentation survives dismissal and constitutes a violation of the UPA as a failure "to state a material fact if doing so deceives or tends to deceive" because the history of the Loan and its eligibility for forbearance relief were never resolved. *See* § 57-12-2(D)(14).

Third, the Court examines Nordeen's claims regarding her delinquency in paying the mortgage. Nordeen alleges "SPS intentionally, willfully, recklessly, and/or negligently put the Loan into default," Doc. 1-1 ¶ 72, and the Demand Letter "is a misrepresentation and a wrongful act . . . because SPS is responsible for any default on the Loan[.]" *Id.* ¶ 75. When drawing all reasonable inferences in Nordeen's favor, the Court concludes this third UPA claim survives dismissal. While Nordeen was not entitled to a second extension of forbearance relief and SPS was not necessarily misrepresenting its right to collect on the Loan following the expiration of Nordeen's forbearance periods, the issue as to whether Nordeen could receive forbearance relief was still outstanding and unresolved. *See* § 57-12-2(D)(14).

### B.    Negligence

Defendants argue that Nordeen's negligence claim fails as a matter of law. Doc. 6 at 5. In New Mexico, "a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181. "Whether a duty exists is a question of law for the courts to decide." *Id.* (quoting *Schear v. Bd. of County Comm'rs*, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 687 P.2d 728).

Nordeen alleges two theories of negligence. First, she claims that SPS was negligent in wrongfully denying her eighteen months of forbearance relief because it had a duty to do so under the CARES Act, Doc. 1-1 ¶¶ 17, 106, and a duty to service and enforce the Loan according to all applicable laws and standards of care. *Id.* ¶¶ 18, 107. Since the Court has found that there is no duty under the CARES Act to provide each borrower, like Nordeen, a full six-month extension of relief or a second extension period, Nordeen cannot satisfy the duty element of negligence to the

extent it is based on the CARES Act. Consequently, she fails to state a plausible claim. Thus, Nordeen's claim for negligence based on a duty to provide her with more than eleven months of forbearance shall be dismissed.

Second, Nordeen alleges SPS failed to exercise ordinary care and breached its duty by making false representations. Doc. 1-1 ¶ 106. For example, Nordeen states that SPS "admitted on numerous occasions that they were not following proper policies, procedures, and standards of care." *Id.* ¶ 49. The parties have not directed the Court to caselaw or statutory or regulatory authority in New Mexico that provides a duty of ordinary care to support this second theory of negligence. Consequently, this second theory of negligence will also be dismissed.

### C.     Negligent Misrepresentation

In New Mexico, "[t]o recover under a theory of negligent misrepresentation, a plaintiff must show that: (1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff." *Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642.

Here, Nordeen argues SPS misrepresented that it tried to resolve the issues with the extension of her forbearance relief prior to her receipt of the Demand Letter. Doc. 1-1 ¶ 76. On December 20, 2020, Nordeen completed her request for an extension of forbearance relief, and subsequently accepted SPS's offer for a five-month extension. *Id*. ¶ 27. Her third request for forbearance relief on May 16, 2021, was denied because "SPS had offered [Nordeen] the maximum forbearance relief allowed for the Loan." *Id.* ¶ 30. SPS subsequently admitted that she should have received relief and SPS was wrong. *Id.* ¶ 46. SPS then stated it was "resolving the situation" regarding her forbearance relief but no further action was taken. *Id.* ¶ 47. Nordeen continued to

contact SPS about this issue, including filing complaints with the Office of the New Mexico Attorney General and the Consumer Financial Protection Bureau. *Id.* ¶¶ 54-55. Moreover, Nordeen states the Loan was put into default (presumably because she was not making mortgage payments while attempting to resolve this forbearance coverage issue). *Id.* ¶ 61. Applying these facts to the legal elements, the Court concludes Nordeen has stated a plausible claim for negligent misrepresentation, thereby surviving dismissal.

### D.     Negligence Per Se

Defendants argue Nordeen's negligence per se claim fails as a matter of law because there is no violation of the CARES Act. Doc. 6 at 6. At the September 22, 2023, motion hearing, Nordeen conceded that there is no statutory or regulatory support for her negligence per se claim. Doc. 53. In other words, Nordeen has not stated a viable claim that SPS violated a statutory obligation—a predicate necessary to sustain a claim of negligence per se. *See Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 7, 143 N.M. 657, 180 P.3d 664 (setting out the elements for negligence per se) (quoting *Archibeque v. Homrich*, 1975-NMSC-066, ¶ 15, 88 N.M. 527, 543 P.2d 820)). Nordeen's claim for negligence per se shall therefore be dismissed.

### E.     Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue Nordeen's breach of contract claim fails as a matter of law because "there is no contractual obligation to grant any forbearance." Doc. 6 at 6 (referencing Docs. 6-1, 6-2, 6-3). The Court agrees. Under New Mexico law, for a contract to be legally valid and enforceable, it "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.,* 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted).

Here, Nordeen pled that the July 24, 2020, letter created a contractual obligation between SPS and herself and that the forbearance relief was sufficient consideration. Doc. 1-1 ¶¶ 128, 131. According to the complaint, the July 24, 2020, letter informed Nordeen that she was entitled to relief that may be extended "for up to a total of 12 months of forbearance." *Id.* at 21. Based on the permissive language in the letter, and the Court's conclusion that there is no statutory or regulatory obligation to provide Nordeen with relief beyond what she already received, the Court concludes she has failed to state a claim for breach of contract.

This conclusion also disposes of Nordeen's related claim for breach of the covenant of good faith and fair dealing. Because there was no contractual obligation between Nordeen and SPS (relating to the claims stated in the complaint), there can be no corresponding claim for breach of the covenant of good faith and fair dealing. *See Watson Truck & Supply Co., Inc. v. Males,* 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639 ("Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."); *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶¶ 15-17, 117 N.M. 434, 872 P.2d 852 (recognizing that in New Mexico a cause of action for breach of the covenant of good faith and fair dealing sounds in contract). Thus, these two claims shall be dismissed.

## III.  The Fair Debt Collection Practices Act

SPS contends that Nordeen's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, are vague and do not contain specific allegations. Doc. 6 at 7. Nordeen argues SPS wrongfully put the Loan into default despite its knowledge that it was "contractually obligated not to collect against" Nordeen. Doc. 10 at 6.

The FDCPA authorizes an action for violation of three broad prohibitions stated in 15 U.S.C. §§ 1692d, 1692e, and 1692f. These prohibitions apply only to an actor who is a "debt

collector"[3] as defined by the Section 1692a(6). *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. More specifically, a debt collector cannot make a "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. For example, it is a violation to collect any amount of debt "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

Nordeen invokes each of the three standards to support her contention that SPS attempted to improperly collect on the debt owed to the Mortgage Corporation, as indicated in the Demand Letter. Doc. 1-1 ¶¶ 70, 148. SPS also approached Nordeen's property and left door hangers indicating SPS was unable to contact her. *Id.* ¶ 82. While SPS legally had a right to collect on the Loan as early as June 1, 2021, it attempted to do so despite its alleged misrepresentations as to Nordeen's forbearance eligibility and the sale of the Loan.

Other courts have found liability under Section 1692e when there are misrepresentations or failures to disclose the mortgage loan's grace period, how imminent foreclosure is, or whether an obligation has been accelerated. *See Koepplinger v. Seterus, Inc.*, No. 17-cv-995, 2018 U.S. Dist. LEXIS 144270, at *11-18 (M.D.N.C. Aug. 24, 2018), *adopted*, 2018 U.S. Dist. LEXIS 156979 (M.D.N.C. Sept. 14, 2018) (mortgage servicer falsely informed consumers that they had

---

[3] SPS does not dispute Nordeen's assertion that it is a "debt collector." *See* Doc. 1-1 ¶ 147; *see also* Doc. 6-4 at 3 (stating the January 12, 2021, letter is "communication from a debt collector").

to pay entire default amount by expiration date, when, in reality, servicer would not accelerate or foreclose because it had not shared grace period policy); *Williams v. Seterus, Inc.*, No. 2:19-cv-00693, 2020 U.S. Dist. LEXIS 10408, at *5-7 (N.D. Ala. Jan. 22, 2020) (allegations that servicer did not accelerate loan in a manner threatened by letter and that letter was nothing more than "empty threat" withstood motion to dismiss); *Fisher v. Seterus, Inc.*, No. 19-cv-1382, 2019 U.S. Dist. LEXIS 195238, at *8-10 (D. Minn. Oct. 21, 2019), *adopted*, 2019 U.S. Dist. LEXIS 194423 (D. Minn. Nov. 8, 2019) (threatened loan would be accelerated if payment not made by date specified, when loan policy dictated otherwise). The Court finds these authorities persuasive. Therefore, drawing all reasonable inferences in Nordeen's favor, the Court concludes that her FDCPA claim survives dismissal.

## IV.   Tortious Debt Collection

Defendants argue that even if Nordeen had been granted additional forbearance relief, SPS still had an underlying right to exercise its collection rights under the Loan, so it did not commit tortious debt collection. Doc. 6 at 7. Nordeen alleges that "SPS acted improperly by attempting to collect on the Loan through its communications with" her in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 1970-NMSC-057, ¶ 6, 81 N.M. 383, 467 P.2d 399. Doc. 1-1 ¶¶ 159, 163. There, the New Mexico Supreme Court stated that "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy." *Montgomery Ward*, 1970-NMSC-057, ¶ 6. "This New Mexico tort concerns collection activity knowingly aimed at the wrong person, thus invading that person's privacy." *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1224 (D.N.M. 2011); *see, e.g.*, *Scollon*

*v. Volt Props. Camino, LLC*, No. 1:21-CV-00565, 2021 U.S. Dist. LEXIS 244663, at *12-14 (D.N.M. Dec. 22, 2021) (finding plaintiff's claim of tortious debt collection withstood dismissal).

According to the complaint, SPS sent Nordeen the Demand Letter which indicated that she could face foreclosure and lose her home, Doc. 1-1 ¶¶ 70-71, and visited her property. *Id.* ¶ 82. There is no indication that SPS was directing the Demand Letter to or visiting the home of the wrong debtor. The Court concludes Nordeen's claim does not survive dismissal as it lacks the requisite facial plausibility. Thus, this claim shall be dismissed.

## V.     The Real Estate Settlement Procedures Act

Nordeen alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, for SPS's alleged failure to provide "information or documents she requested in her RESPA letters" and "failing to provide an explanation why some information was unavailable." Doc. 1-1 ¶¶ 169-70. RESPA imposes a duty upon loan servicers to respond to borrower inquiries. 12 U.S.C. § 2605(e). A borrower must submit a "qualified written request" to the loan servicer with "a statement of the reasons for the belief . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). No later than thirty days after receipt of the request, the servicer shall "make appropriate corrections in the account of the borrower" and provide the borrower with notification of such a correction, *id.* § 2605(e)(2)(A), or the servicer shall conduct an investigation and then "provide the borrower with a written explanation or clarification that incudes" the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer," and contact information for an employee, "the office or department of[] the servicer who can provide assistance." *Id.* § 2605(e)(2)(C).

In September 2021, Nordeen sent SPS her first RESPA letter to request information regarding the status of the Loan. Doc. 1-1 ¶ 62. On October 1, 2021, SPS responded and indicated that the Loan still belonged to the Mortgage Corporation. *Id.* ¶ 63. On November 2, 2021, Nordeen sent more RESPA letters to which SPS "failed to adequately respond" because they were either boilerplate responses or "non-responses." *Id.* ¶ 80. Nordeen has not provided further detail or information about the letters, nor has Nordeen alleged what conduct was a violation of RESPA—whether it was the lack of an investigation, an explanation, or contact information. As such, even when taking all factual allegations within the complaint as true, the Court concludes Nordeen has failed to state a plausible claim. This claim will be dismissed.

## VI.    Vicarious Liability

Defendants argue Nordeen's vicarious liability claim fails as a matter of law because she "has failed to establish any wrongdoing on the party of any defendant," because she has failed to set forth "the type of relationship required to establish vicarious liability," and because vicarious liability is not a separate cause of action in and of itself. Doc. 6 at 8. New Mexico law defines vicarious liability as "indirect legal responsibility," which "is based on a relationship between the parties." *Kinetics, Inc. v. El Paso Prods. Co.*, 1982-NMCA-160, ¶ 29, 99 N.M. 22, 653 P.2d 522.

Taking the facts in the complaint as true, SPS was acting as an agent of the Mortgage Corporation, and Nordeen has no recourse against the Mortgage Corporation for the following claims because no direct legal responsibility exists following their aforementioned dismissal: negligence, negligence per se, breach of contract, breach of the covenant of good faith and fair dealing, tortious debt collection, or RESPA. *See Valdez v. R-Way, LLC*, 2010-NMCA-068, ¶ 4, 148 N.M. 477, 237 P.3d 1289 ("[W]ith the release of an agent, the means by which liability can be imputed to the principal is destroyed."); *Harrison v. Lucero,* 1974-NMCA-085, ¶ 12, 86 N.M.

581, 525 P.2d 941 ("[A]bsent any delict of the [employer] other than through the [employee], the exoneration of the [employee] removes the foundation upon which to impute negligence to the [employer]."). Thus, the Mortgage Corporation cannot be held liable for those causes of action.

## VII.   Punitive Damages

Finally, Defendants argue that punitive damages are not a claim in and of themselves. Doc. 6 at 9. The Court agrees and notes that "[a] punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991); *see Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir.1992) ("A request for damages, however, does not constitute a cause of action; rather damages are a remedy for a legal wrong."). Consequently, a Rule 12(b)(6) motion is not the proper mechanism for challenging Nordeen's request for punitive damages. Thus, the Court will dismiss Count XII.

## CONCLUSION

For the aforementioned reasons, Defendants are entitled to dismissal as to Count II, Counts IV through VI, and Counts VII through IX. Otherwise, Nordeen has stated plausible claims that survive the motion to dismiss.

It is hereby ordered that Defendants' Motion is granted in part and dismissed in part. Doc. 6. Pursuant to Rule 12(b)(6), Count II, Counts IV through VI, and Counts VII through IX are dismissed with prejudice.

It is further ordered that Count XII for punitive damages is dismissed as currently written as a cause of action. *See Mason*, 948 F.2d 1544.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA